**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:14cv133-FDW**

| | | |
|---|---|---|
| **WILBERT LESTER FAIR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **FRANK L. PERRY,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

      **THIS MATTER** is before the Court upon Wilbert Lester Fair's pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 12.)

## I.    BACKGROUND

      Petitioner is a prisoner of the State of North Carolina, who, on August 27, 2012, was indicted by a Lincoln County grand jury on two counts of First Degree Murder in violation of N.C.G.S. § 14-17. (Indictments, Resp't's Ex. A, Doc. No. 14-2.) Petitioner was represented by appointed counsel, Capital Defender, M. Victoria Jayne.

      On September 13, 2013, Petitioner pled guilty, pursuant to a plea agreement, to two counts of second-degree murder in Lincoln County Superior Court. (Transcript of Plea, Resp't's Ex. B, Doc. No. 14-3.) The factual basis for Petitioner's plea is found in his confession to police, which is summarized by Respondent, as follows:

> Petitioner describes going to the home of victims, Bonnie and Mike, around 11:30 p.m. on 24 July 2012 to share crack cocaine with them. Petitioner admits to the prior consumption of alcohol, marijuana and cocaine. Petitioner carried a hammer with him to fend off mean dogs in the area. After he arrived at the victims' house, he placed the hammer on the coffee table. As he was doling out the crack, Bonnie became angered because she was not getting her fair share and began to argue with

1

Petitioner. She hit Petitioner in the shoulder, grabbed his arm, and shut the door on him. Mike stood up and told Petitioner "You don't know me. I'll shoot you." Mike did not have a gun, and Petitioner never saw a gun. Petitioner thought Mike was going into the bedroom to get a gun to defend his wife, so Petitioner snatched the hammer off the coffee table and repeatedly struck Mike in the head. Bonnie began to scream at Petitioner and came toward him, and he struck her repeatedly in the head with the hammer. Bonnie got up and called Petitioner's name and said she would get him for this which prompted Petitioner to strike her again. Petitioner "ran because he done wrong," never to return. Petitioner claims both Bonnie and Mike were alive when he left. Petitioner never sent anyone over to the victims' house to check on them.

(Mem. in Support of Resp't's Summ. J. Mot. 3-4 n.3, Doc. No. 14) (citing Tr. of Lincolnton Police Dep't Interview of Wilbert Lester Fair, Doc. No. 1-7) (internal citations omitted). In accordance with the plea agreement, the court sentenced Petitioner as a Class B2 felon, Prior Record Level VI, to consecutive active terms of imprisonment with a minimum term of 251 months and a maximum term of 314 months, which was at the bottom of the presumptive punishment range, and credited him for 408 days of pre-trial incarceration. (J. and Commitment, Resp't's Ex. D, Doc. No. 14-5.)

Petitioner did not perfect a timely notice of appeal. On January 13, 2014, Petitioner filed a Motion for Appropriate Relief ("MAR") with the Lincoln County Superior Court. (Resp't's Ex. E, Doc. No. 14-6.) It was denied on the merits on January 15, 2014. (Order Den. MAR, Resp't's Ex. F, Doc. No. 14-7.) On March 10, 2014, Petitioner filed a Petition for a Writ of Certiorari with the North Carolina Court of Appeals. (Resp't's Ex. G, Doc. Nos. 14-8 thru 14-10.) It was denied on March 19, 2014. (Order Den. Cert. Pet., Resp't's Ex. H, Doc. No. 14-11.)

Petitioner signed and placed the instant pro se habeas petition in the prison mailbox on July 24, 2014. It was filed in this Court on July 29, 2014. (Doc. No. 1). After conducting an initial review required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court ordered Respondent to file a response to the Petition. Respondent filed

a Response (Doc. No. 11) and a Motion for Summary Judgment (Doc. No. 12) with supporting memorandum and exhibits (Doc. No. 14.)  Petitioner subsequently filed a Response to the Motion for Summary Judgment.  (Doc. No. 16.)

## II.    STANDARDS OF REVIEW AND DISCUSSION

### A.   Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).  Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).  Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B.   The Antiterrorism and Effective Death Penalty Act of 1996

#### (1)  Exhaustion

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 374-91 (2000).  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  § 2254(b)(1)(A).  To meet the exhaustion requirement, a petitioner must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In other words, "[t]he exhaustion doctrine

bars a claim if it is raised for the first time in a federal habeas petition." <u>Mickens v. Taylor</u>, 240

F.3d 348, 356 (4th Cir. 2001) (en banc).

To fairly present the claim, a petitioner must present to the state courts "both the

operative facts and the controlling legal principles" associated with each claim. <u>Baker v.

Corcoran</u>, 220 F.3d 276, 289 (4th Cir. 2000) (citation omitted). To satisfy this requirement, the

claim must "be presented face-up and squarely." <u>Mallory v. Smith</u>, 27 F.3d 991, 995 (4th Cir.

1994) (citation and internal quotation marks omitted).

### (2) Procedural Default

"A distinct but related limit on the scope of federal habeas review is the doctrine of

procedural default." <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998). One way in which

procedural default occurs is when "a habeas petitioner fails to exhaust available state remedies

and the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred." <u>Id.</u> (internal quotation

marks omitted). Procedural default also occurs "[i]f a state court clearly and expressly bases its

dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule

provides an independent and adequate ground for the dismissal." <u>Id.</u>

Absent a showing of cause and prejudice, or a fundamental miscarriage of justice, a

federal habeas court will not review a claim that is procedurally defaulted. <u>See</u> <u>Wright v.

Angelone</u>, 151 F.3d 151, 160 (4th Cir. 1998). To show cause, a petitioner must show "that some

objective factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule," <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986), or that "the factual or legal basis

for the claim was not reasonably available to the claimant at the time of the state proceeding,"

<u>Roach v. Angelone</u>, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, [a p]etitioner may prove

that failure to consider the claims will result in a fundamental miscarriage of justice." <u>McCarver v. Lee</u>, 221 F.3d 583, 588 (4th Cir. 2000) (citing <u>Coleman v. Thompson</u>, 501 U .S. 722, 750 (1991)).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.  "Actual innocence," however, requires "factual innocence, not mere legal insufficiency."  <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).

### (i.)     Involuntary Guilty Plea:  Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of counsel claims in the instant Petition. Presentation of the claims is repetitive and spread out over several grounds in the Petition and in exhibits to the Petition.  (Pet. 1-15, Doc. No. 1-1; Pet'r's Ex. 8 2-5, Doc. No. 1-11.) Nevertheless, the Court has identified the following claims alleging deficiency on the part of trial counsel in relation to Petitioner's plea:  (1) counsel promised Petitioner that she would get the charges reduced to manslaughter but was only able to secure a deal allowing Petitioner to plead to second-degree murder (Pet., <u>supra</u>, 5-6); (2) counsel breached her duty of confidentiality and told Petitioner's family that if he did not accept the deal he was facing life in prison or lethal injection, which caused his family to pressure him to take the deal (Pet., <u>supra</u>,); (3) counsel did not explain the elements of second-degree murder or the constitutional rights that he was waiving by pleading guilty (Pet'r's Ex. 8, <u>supra</u>, at 2-3); (4) counsel failed to object during the plea hearing when the prosecutor asked the trial court to order that the evidence in the case be destroyed (Pet., <u>supra</u>, at 13); and (5) counsel did not provide Petitioner a copy of his discovery before his plea.  According to Petitioner, that discovery showed that other individuals claimed to have entered the victims' home after he had left, found the victims still alive, stole drugs and money from the house, and "finished" the couple off.  (Pet'r's Ex. 8, <u>supra</u>, at 4.)

Respondent contends that Petitioner failed to exhaust these claims in state court and that they now would be procedurally barred if Petitioner attempted to return to state court to satisfy the exhaustion requirement. As such, Respondent argues, they are procedurally defaulted here.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 3745 (1986). In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

The Supreme Court has held that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). Where a defendant enters a guilty plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." Id. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)) (quotation marks omitted). To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 58.

Having reviewed and considered the state court record (MAR, Resp't's Ex. E, Doc. No. 14-6) it is apparent that Petitioner failed to present to the state court the operative facts or legal arguments necessary to exhaust ineffective assistance of counsel claims one (1) through four-(4) of the instant Petition.  The only issues Petitioner raised before the state court related to discovery.  He claimed in his MAR that there was exculpatory evidence provided to trial counsel during discovery that he did not get until after he entered his guilty plea.  According to Petitioner, the exculpatory evidence established that someone else could have killed the victims. Petitioner asserted that had he been aware of the facts within the discovery material, he would not have pled guilty to second-degree murder because he believed he was guilty only of manslaughter.  (MAR, supra, at 1-14.)  Liberally construed, both the MAR and the Petition raise an ineffective assistance of counsel claim related to discovery.  Therefore, only claim five (5) was exhausted in the state courts.

Because Petitioner did not fairly present claims one (1) through (4) in the state court that considered his claims on the merits when he had the opportunity to do so, and because the state courts would now treat the claims as procedurally barred, see N.C. Gen. Stat. §§ 15A-1419(a)(1) and (b) (2011)[1], the claims are procedurally defaulted on federal habeas review as well. Therefore, this Court may not consider these claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice.  See Wright, 151 F.3d at 160.

Petitioner cannot show that the Court's refusal to consider his defaulted claims would result in a fundamental miscarriage of justice.  He does not claim to be innocent of the Vincents' deaths; instead, he contends that he is guilty of no more than manslaughter, as a result of an

---

[1] North Carolina post-conviction law provides, in relevant part, that a post-conviction claim shall be denied when the defendant was in an adequate position to have raised it in a previous MAR but did not do so, absent showing of cause and prejudice or fundamental miscarriage of justice, (i.e., actual innocence).  N.C. Gen. Stat. §§ 15A-1419(a)(1) and (b) (2011).

imperfect self-defense. As such, he asserts legal insufficiency, not factual innocence. See

Bousley, 523 U.S. at 623 ("Actual innocence," however, requires "factual innocence, not mere

legal insufficiency.")

As for whether Petitioner can demonstrate cause to overcome his procedural default, he

may do so only if the following four conditions are met:

> (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the
> "cause" for default "consist[s] of there being no counsel or only ineffective
> counsel during the state collateral review proceeding"; (3) "the state collateral
> review proceeding was the initial review proceeding in respect to the
> ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that
> an ineffective-assistance-of-trial-counsel claim be raised in an initial-review
> collateral proceeding."

Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (quoting Trevino v. Thaler, 133 S.Ct. 1911,

1918 (2013)). The Court need not determine whether all four conditions have been met, as

Petitioner has failed to demonstrate the requisite substantiality of his defaulted claims (i.e., they

do not have any merit or are wholly without factual support). See Martinez v. Ryan, 132 S.Ct.

1309, 1319 (2012).

As an initial matter, Petitioner has not demonstrated that his attorney's recommendation

that he plead guilty to two counts of second degree murder was outside "the range of competence

demanded of attorneys in criminal cases." See Hill, 474 U.S. at 56 (citation and internal

quotation marks omitted). Petitioner acknowledges that the prosecutor refused to enter a plea

deal that would allow Petitioner to plead to two counts of voluntary manslaughter. Additionally,

Petitioner had confessed to police that he had beaten both victims repeatedly in the head with a

hammer and that neither had a weapon. Had he gone to trial and lost, the minimum penalty he

faced was life in prison without parole and the maximum was a death sentence.

Furthermore, most of Petitioner's allegations contradict his sworn declarations on the transcript of plea forms.  (Resp't's Ex. B, Doc. No. 14-3.)  "[R]epresentations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing as well as any findings made by the judge accepting the plea constitute a formidable barrier in subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  A petitioner challenging his plea "necessarily ... assert[s] that not only his own transcribed responses, but [also] those given by two lawyers, were untruthful . . ." Id. at 80 n.19.  "In the absence of clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea." Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984).

As evidenced by the Transcript of Plea forms, the trial judge personally addressed the Petitioner in open court, and Petitioner swore to the following:

> That the charges had been explained to him by his lawyer and that he understood every element of each charge;
>
> That he had discussed possible defenses to the charges with his lawyer;
>
> That he understood that by pleading guilty he was forfeiting certain constitutional rights, including the right to be tried by a jury, and the right to confront and cross-examine the witnesses against him, as well as accepting limitations on his right to appeal; and
>
> That he understood pleading guilty might impact how long biological evidence in his case would be preserved.

(Tr. of Plea, supra, at 2.)  Thereafter, the trial judge described the charges, the maximum and mandatory minimum punishments and the possibility of consecutive sentences.  (Tr. of Plea, supra, at 3.)  Petitioner swore under oath that he understood that he was pleading guilty to two counts of second-degree murder and that he was, in fact, guilty of two counts of second-degree murder.  (Tr. of Plea, supra,)

The trial judge read the plea agreement to Petitioner, who swore that it was a correct recitation of the agreement he had entered into with the State. Petitioner then swore that he was entering the plea of his own free will, fully understanding what he was doing, and that no one had promised anything or threatened him in any way to cause him to enter the plea against his wishes. Moreover, Petitioner indicated that he did not have any questions about the pleas or about anything else connected to his case. Petitioner's trial counsel and the prosecutor each certified that Petitioner had agreed to the plea arrangement described by the trial judge. (Tr. of Plea, supra, at 4.)

Petitioner signed the Transcript of Plea, thereby acknowledging that the answers given therein were true and accurate. (Tr. of Plea, supra,) Accordingly, Petitioner's conclusory and unsupported assertions that he did not understand the elements of second-degree murder or the nature of the constitutional rights he was waving when he entered his plea fall short of the "clear and convincing evidence" necessary for this Court to disregard his sworn and unambiguous statements, and those of his counsel and the prosecutor, at the plea hearing. Little, 731 F.2d at 239 n.2.

Finally, Petitioner has not even attempted to demonstrate that he would have been willing to go to trial charged with two counts of first-degree capital murder. In fact, he acknowledges that he agreed to plead guilty to second-degree murder, not on the advice of counsel, but at the urging of his family (Pet., supra, at 5, 13), which conforms with his statement under oath that he entered the plea of his own free will, fully understanding what he was doing (Tr. of Plea, supra, at 4).

Having failed to demonstrate that his ineffective assistance of counsel claims are substantial ones, Petitioner has failed to establish "cause" to excuse his procedural default of

those claims.[2]  See Fowler, 753 F.3d at 461.  Therefore, Petitioner's ineffective assistance of counsel claims one (1) through (4) are procedurally defaulted on federal habeas review.  See id.

### (ii.)  Other Claims

Petitioner claims that neither his attorney nor prosecutor signed the Transcript of Plea. (Pet., supra, at 6.)  He also claims that he was "vindictively" prosecuted by the State.  (Pet'r's Ex. 8, supra, at 2-3.)  Respondent contends that Petitioner failed to exhaust these claims in the state courts and that they are procedurally defaulted on federal habeas review.

Having reviewed and considered the state court record (MAR, Resp't's Ex. E, Doc. No. 14-6) it is apparent that Petitioner failed to present to the state court the operative facts or legal arguments necessary to exhaust either of these claims.  Because Petitioner did not fairly present these claims in the state court that considered his claims on the merits when he had the opportunity to do so, and because the state courts would now treat the claims as procedurally barred, see §§ 15A-1419(a)(1) and (b), the claims are procedurally defaulted on federal habeas review as well.  Therefore, this Court may not consider these claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice.  See Wright, 151 F.3d at 160.

For reasons previously stated, Petitioner cannot demonstrate that the Court's refusal to consider his defaulted claims would result in a fundamental miscarriage of justice.  See Bousley, 523 U.S. at 623.  Furthermore, Petitioner has made no attempt to demonstrate cause to excuse his failure to raise these claims in the state court when he filed his MAR.  Consequently, Petitioner's claims that neither his attorney nor prosecutor signed the Transcript of Plea and that he was

---

[2] The Court need not address whether Petitioner was prejudiced.  See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995) ("We are mindful . . . that in Engle [v. Isaac, 456 U.S. 107, 134 n.43 (1982)], after finding that there was no cause for the default, the Supreme Court ended its inquiry, noting that because 'we conclude[d] that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice.'"); see also Breard v. Pruett, 134 F.3d 615, 620 (4th Cir. 1998) (same).

"vindictively" prosecuted by the State are procedurally defaulted on federal habeas review, and this Court will not consider them on the merits.  See Wright, 151 F.3d at 160.

### 3.    Deferential Standard of Review

Petitioner claims that trial counsel was ineffective for not providing him copies of discovery before he entered his guilty pleas.  Liberally construed, Petitioner raised this claim in his MAR, and it was denied on the merits.

Because the state court adjudicated this claim on its merits, federal habeas review is limited by the deferential standard set forth in AEDPA, 28 U.S.C. § 2254(d).  This Court may grant habeas relief on claims of constitutional error adjudicated on their merits in state court only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]."  Williams, 529 U.S. at 405.  A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case."  Id. at 407.  A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

In his MAR, Petitioner asserted that discovery received from the State showed that several people had reported seeing "others" entering and leaving the victims' house after Petitioner left; that several people reported another individual had claimed to have killed the victims; that the victims were under investigation by law enforcement for their drug activity; that the victims had enemies; that someone else could have killed the victims; and that someone robbed the crime scene. Petitioner asserted further that his attorney had all of the aforementioned information but withheld it from him. (Resp't's Ex. E, supra, at 2, 4, 6.) In an affidavit appended to his MAR Petitioner avers:

> I wouldn't have pleaded guilty to 2nd degree knowing people were in and out of there house when they were still alive and this people came in a done the rest of the damage and still going around still bragging about what they done to Mike and Bonnie cause they was planning this robbery, they stole everything they could from them while they were suffering. I'm guilty of manslaughter evidence has been witheld from not giving me my motion of discovery violate my rights.

(Resp't's Ex. E, supra, at 12.)

In rejecting Petitioner's claim, the state court stated the following:

> In response to questions posed to the [Petitioner] after he had sworn to give truthful answers, the [Petitioner] stated in open court that he did, in fact, kill these two victims, a point he now apparently disputes, based upon review of his "Motion for Discovery." The problem with this contention is that the [Petitioner] knew on the day of his guilty plea what he had or had not done. He answered under oath that he was, in fact guilty of these crimes. There was a judicial finding that his guilty plea was entered knowingly, understandingly and voluntarily. The fact that he now has an abundance of time on his hands to scrutinize again every line of his discovery to determine, after the fact, whether he "should have gotten a better deal" is no basis for setting aside a guilty plea with which he was perfectly happy on the day it was entered.

(Order Den. MAR 3, Res't's Ex. F, Doc. No. 14-7.) Notably, Forrest D. Bridges, the state court judge who reviewed Petitioner's MAR, also presided at Petitioner's plea hearing. As such, he was in a position to remember Petitioner's demeanor during the hearing.

Attached to Petitioner's MAR as exhibits were documents evidently included in the "discovery" packet he received several months after judgment had been entered. Among the exhibits are statements from several of the victims' neighbors that another man had claimed to have killed the Vincents. (MAR, <u>supra</u>, at 18, 28, 32-36, 38-40, 42.) Additionally, there is a copy of an email from trial counsel requesting that the prosecutor not allow law enforcement to destroy any files on the Vincents, who were under investigation for selling drugs. (MAR, <u>supra</u>, at 26.)

The state court reasonably could have concluded that the evidence attached to the MAR was insufficient to demonstrate trial counsel's recommendation that Petitioner plead guilty to two counts of second degree murder was outside "the range of competence demanded of attorneys in criminal cases." <u>See</u> <u>Hill</u>, 474 U.S. at 56 (citation and internal quotation marks omitted). As an initial matter, there is nothing in the record to indicate the prosecutor would not have tried Petitioner on two counts of first-degree capital murder had he rejected the plea. Second, a reasonable attorney could have concluded that the statements alleging someone else claimed to have killed the Vincents were: (1) not direct evidence that someone else did, in fact, kill the Vincents; and (2) hearsay that would not have been admissible at trial as direct evidence that someone else killed the Vincents, <u>see</u> N.C. R. of Evid., Gen. Stat. § 8C-1, Rules 802-804. A reasonable attorney also could have concluded that a defense based upon the theory that someone else murdered the Vincents might foreclose jury instructions on second-degree murder and manslaughter. Concurrently, a reasonable attorney could have concluded that a defense based upon a theory of imperfect self-defense would not have been successful in light of Petitioner's admission that neither victim had a weapon. For all these reasons and more, it would not have

been unreasonable for the state court to determine that counsel's performance fell within the range of professional competence required by the 6th Amendment.  See Hill, 474 U.S. at 57.

While Petitioner repeatedly asserts that he would not have pled guilty to second degree murder had he had access to discovery, he also admits to being guilty of manslaughter. Petitioner's own pleadings state that the prosecutor was not willing to accept a guilty plea to two counts of manslaughter.  Consequently, the state court reasonably could have concluded that had Petitioner rejected the plea offer, the State would have proceeded to try him for first-degree capital murder.  Nowhere in the record does Petitioner state that he would have been willing to go to trial on first-degree murder charges.  See Hill, 474 U.S. at 58.  Nor is there any reason to believe that Petitioner would have disregarded the entreaties of his family and pregnant wife that he take the plea offer and avoid the risk of life imprisonment without parole or the death penalty. Consequently, it would not have been unreasonable for the state court to conclude that Petitioner had failed to demonstrate prejudice under Strickland and Hill.

The state court's adjudication of Petitioner's ineffective assistance of counsel claim did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.  See §§ 2254(d)(1)-(2).  Therefore, Respondent is entitled to summary judgment on this claim.

## III.    ORDER

**FOR THE REASONS STATED HEREIN, IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED AND DISMISSED**;

2) Respondent's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines

to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: September 9, 2015

Frank D. Whitney
Chief United States District Judge